

FILED

AUG 2 7 2019

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DANIEL GERARD LACEY, | Cause No. CV 17-116-BLG-SPW-TJC |
| Petitioner, | |
| vs. | ORDER AND FINDINGS AND |
| LYNN GUYER:[1] ATTORNEY GENERAL OF THE STATE OF MONTANA, | RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| Respondents. | |

On August 30, 2017, Daniel Gerard Lacey, a state prisoner proceeding pro

se, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc.

1.)

Lacey then filed a Motion to Stay on September 1, 2017, asking this Court to

hold his habeas petition in abeyance while he pursued various remedies in the state

courts, including an application for review of his sentence by the Montana

---

[1] The Clerk of Court will be directed to amend the caption in this matter to reflect
that Lynn Guyer is the current warden of the Montana State Prison. In a federal
habeas petition, a state prisoner must name the state officer having custody of him
as the respondent. *Ortiz-Sandoval v. Gomez*, 81 F. 3d 891, 894 (9th Cir. 1996)
(citing Rule 2(a), 28 U.S.C. foll. §2254).

1

Sentence Review Division, and an action filed in the Third Judicial District

challenging the validity of his sentence. (Doc. 3.) Lacey acknowledged several of

the claims in his § 2254 petition were not yet exhausted and expressed his intent to

present them in Montana's Thirteenth Judicial District Court. *Id.* at 2.

Respondents were ordered to respond to Lacey's request for a stay. In doing so,

Respondents informed the Court that the two state court matters upon which Lacey

was basing his motion had since concluded. (Doc. 6 at 2-5); see also, (Docs. 6-1 &

6-3.) Lacey's request for a stay was ultimately denied. (Doc. 8 at 1-2.)

Lacey was then directed to show cause as to why claims 3-11 in his federal

petition should not be dismissed as procedurally defaulted. *Id.* at 5-8. Lacey

responded to this Court's order. (Doc. 24.) Lacey also filed several companion

motions; each will be addressed in turn.

## I.     Lacey's Outstanding Motions

### i.     Motion to Appoint Counsel

Lacey has requested that counsel be appointed to represent him. Counsel

must be appointed "when the case is so complex that due process violations will

occur absent the presence of counsel," *Bonin v. Vasquez*, 999 F.2d 425, 428-29 (9th

Cir. 1993) (discussing *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) (per

curiam)), or when an evidentiary hearing is required, Rule 8(c), Rules Governing §

2254 Cases. Counsel may be appointed at any stage of the proceedings if "the

2

interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Under § 3006A, the court must consider the likelihood of success on the merits, the complexity of the legal issues involved, and the petitioner's ability to articulate his claims pro se. *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam).

Lacey's case is not so complex that his right to due process will be violated if counsel is not appointed. Moreover, he has more than adequately articulated his claims pro se. Lacey's motion to appoint counsel (Doc. 11) will be denied.

### ii.    Motion for Leave to File Under Seal

Lacey seeks leave of the Court to file a revised brief in support of his request for appointment of counsel under seal. Lacey explains that it is against the policy of the Montana State Prison for inmates to assist each other with legal work; individuals who violate this policy are subject to discipline. (Doc. 13 at 2.) For that reason, Lacey does not disclose in his motion and brief for appointment of counsel the identities of two inmates who have assisted him with his legal work, and only refers to them as John Doe 1 and John Doe 2. Lacey offers to file a revised brief which identifies the John Does by name, but request that his revised brief be filed under seal.

The Court does not require Lacey to identify the names of inmates who have assisted him with his legal work to decide his request for appointment of counsel, or any other motion pending before the Court. Therefore, Lacey will not be

3

required to file a revised brief, and his motion to file any such brief under seal (Doc. 14) is denied as moot.

### iii.    Motion for Oral Presentation

Lacey requests that an accommodation be made, and that he be allowed to present his claims and arguments orally to the Court. (Doc. 15.) Lacey explains that he has a learning disability that prevents him from communicating effectively in writing. *Id.* at 2. Lacey explains that part of the reason he has enlisted help from other inmates in preparing legal documents is due to his learning disability. *Id.* at 3-4. Lacey makes his request pursuant to the Americans with Disabilities Act (ADA) and this Court's local rules. *Id.* at 1.

But the Court notes Lacey has been able to present his claims and protect his interests to date through his pro se filings. The Court is aware of no right and/or procedure, aside from an evidentiary hearing, that would provide for a petitioner to present oral argument. See, Rule 8(c ) of the Rules governing Section 2254 Cases. Additionally, Lacey's citation to the ADA has no bearing upon his request. There is adequate information in the record before the Court to analyze Lacey's petition. Oral argument is not necessary; accordingly, Lacey's motion will be denied.

### iv.    Motion for Leave to File Over-Length Response

Lacey filed a motion for leave to file an over-length response to this Court's Order to show cause and brief in support. (Docs. 22 & 23.) Lacey's response was

4

filed in conjunction with this motion.  As set forth below, the Court has reviewed the entirety of Lacey's response and addresses his arguments.  Accordingly, Lacey's Motion (Doc. 22) will be granted.

### v.    Motion for Extension of Time

Lacey filed a motion for extension of time to file his response to this Court's Order to show cause in the event the Court denied his motion to file an over-length brief.  (Docs. 17 & 18.)  As set forth above, the Court has granted Lacey's request to file an enlarged brief.  Accordingly, Lacey's Motion (Doc. 17) will be denied as moot.

### vi.    Motion for Leave to File Legal Innocence Memorandum

Lacey filed a motion for leave to file a legal innocence memorandum and brief in support, (Docs. 19 & 20), along with his memorandum regarding "legal innocence."  (Doc. 21.)  As set forth below, the Court has reviewed the entirety of Lacey's memorandum as it addresses his argument surrounding legal innocence herein.  Accordingly, Lacey's Motion (Doc. 19) will be granted.

## II.    Factual History/Procedural History

In February of 2005, Lacey and his girlfriend, Carla Dozier, and Dozier's three children from a previous relationship, moved into a house together in Billings.[2]  The lease was exclusively in Dozier's name.  Lacey kept his laptop

---

[2] The following factual summary is taken from the Montana Supreme Court's

5

computer in a makeshift home-office, which was accessible to all members of the household.  While using Lacey's computer, Dozier discovered sexually explicit images involving children, including images showing Lacey sexually abusing Dozier's six-year-old daughter.  Dozier contacted the Billings Police Department (BPD), who in turn contacted the Federal Bureau of Investigation (FBI).  Ultimately, officers conducted searches of the house and garage and, with Dozier's consent, seized the laptop.  Authorities subsequently obtained a federal search warrant to search the laptop.[3]

The search of the computer revealed numerous images of child pornography taken by Lacey, including images of Lacey engaging in sexually explicit contact with Dozier's daughter.  Evidenced seized from the garage also yielded a videotape of Lacey sexually abusing a toddler girl whom he had babysat in the past.  In the end, authorities discovered 217 movies and over 3,000 images of child pornography on the computer, including images of children under the age of twelve subjected to sadistic and/or masochistic abuse.

---

opinion in *Lacey v. State*, 2017 MT 18, 386 Mont. 204, 389 P. 3d 233, and is presumed correct.  28 U.S.C. §2254(d)(2), (e)(1).  Lacey does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the state court.  See, *Vasquez v. Kirkland*, 572 F. 3d 1029, 1031, n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

[3] See, Federal Search Warrant and Application (Doc. 1-1 at 49-66.)

6

The State of Montana charged Lacey with four counts of felony Sexual Intercourse without Consent and five counts of felony Sexual Assault.

Additionally, Lacey was charged in this Court with three counts of Sexual Exploitation of Children, one count of Receipt of Child Pornography, one count of Possession of Child Pornography, and Forfeiture. Lacey conditionally pled guilty to two counts of Sexual Exploitation of Children and one count of Possession of Child Pornography, reserving the right to appeal an adverse ruling on his pretrial motion to suppress.[4] He was sentenced to 360 months in federal prison.[5]

On his state charges, Lacey moved to suppress all the evidence discovered during the investigation, in addition to his statements. See generally, (Doc. 1-1 at 30-45.) Lacey argued Dozier did not have authority to consent to the laptop's seizure, and that the seizure and search of his laptop violated his right to privacy under state and federal law. *Id.* at 36-38. Lacey also argued the warrantless search

---

[4] See, *USA v. Lacey*, CV-05-50-BLG-JDS, Plea Agreement (Doc. 42 at 2-3) (filed Jan. 26, 2006).

[5] On appeal, the Ninth Circuit affirmed, finding Dozier had actual authority to consent to the search and seizure of the home computer, and that Dozier had common authority over the items seized from the garage. Accordingly, it was not error to decline to suppress the evidence. See, *U.S. v. Lacey,* 225 F3d. Appx. 478 (2007). Lacey also filed a motion for federal habeas relief pursuant to 28 U.S.C. §2255 challenging his sentence. Lacey's petition was denied and dismissed as untimely. See, *Lacey v. U.S.*, No. CR-05-50-BLG-JDS, Or. (D. Mont. Jan. 13, 2011).

7

of his garage was illegal because he did not provide consent. *Id.* at 39.

Accordingly, Lacey argued that all evidence obtained against him flowed from

illegal searches and seizures and should be suppressed as "fruit of the poisonous

tree." *Id.* at 43, 44-45.  Following a two-day hearing,[6] the district court denied

Lacey's motions.

Following the denial of his motions, Lacey entered into a plea agreement,

reserving his right to appeal the denial of his suppression motions.  Lacey

ultimately was convicted of four counts of Sexual Intercourse without Consent and

two counts of Sexual Assault.  The State dismissed the remaining counts.  Lacey

was sentenced to life plus one-hundred thirty years.[7]

### i.    Direct Appeal

On direct appeal, Lacey argued the state district court erred by not

suppressing the physical evidence seized by the FBI and BPD.  Specifically, and

pertinent to these proceedings, Lacey argued (1) Dozier did not possess joint

access, control, or common authority of the laptop to consent to its search and

seizure; and (2) he had an actual and reasonable expectation of privacy in his

computer files, because the pornography was placed in a hidden file on his laptop,

---

[6] See e.g., (Doc. 1-1 7, Doc. Seq. 63-64)(indicating suppression hearing held on
April 4-5, 2006).

[7] See, Judgment (Doc. 1-1 at 68- 74.)  Lacey's state sentence was ordered to run
concurrently to his federal sentence. *Id.* at 69.

and because computers should be entitled to greater protection.  In relation to the

garage search, Lacey argued he had a reasonable and actual expectation of privacy

in his boxes and containers that were in the garage, and that Dozier lacked the

requisite actual authority to consent to their search.  Lacey therefore argued all the

physical evidence seized should have been excluded as "fruit of the poisonous

tree."  See, *State v. Lacey*, 2009 MT 63, ¶¶29-32, 349 Mont. 371, 204 P. 3d 1192,

(attached as Exhibit 2 to Lacey's petition (Doc. 1-2 at 13-14)).

The Montana Supreme Court denied Lacey relief.  The court agreed that

under state law Dozier did not have actual authority to consent to the seizure of the

computer; thus, the responding officer needed probable cause for the seizure.  The

court observed that, "arguably, Dozier's statement to a BPD officer that she had

observed images on the laptop showing Lacey sexually abusing her minor daughter

was sufficient, by itself, to demonstrate probable cause to seize the laptop." *Lacey*,

¶52.  Nonetheless, the court concluded that even if probable cause was lacking,

subsequent searches and seizure of evidence would have provided probable cause

to seize the laptop.  Therefore, the inevitable discovery exception to the fruit of the

poisonous tree doctrine applied, and suppression was not required.  *Id.* at ¶¶ 52-56.

In relation to the search and seizure of the boxes from the garage, the court

held that "Dozier had sufficient common authority to consent to their search,"

because Lacey's items "remain[ed] co-mingled, unmarked, and unlocked in a

9

common area in a house he shared with Dozier which was rented in her name

alone." *Id.*, ¶ 41.  The court affirmed Lacey's convictions.

### ii.    Postconviction proceedings

Lacey then sought postconviction relief.  Lacey argued trial counsel was

ineffective for: (1) failing to proactively challenge the "exceptions" to *Wong Sun v.*

*United States,* 471 U.S. 471 (1963); (2) failing to challenge the warrantless seizure

of items from his garage following the third-party consent; (3) failing to file a writ

of supervisory control after the trial court's denial of Lacey's motions to suppress;

and, (4) failing to file a motion to dismiss based upon a purported Double Jeopardy

violation that occurred after Lacey pled guilty to federal charges which "arose out

of the same transaction."  (Doc. 1-3 at 22-41; 46-53.)

The district court ultimately denied Lacey's petition, his request for counsel,

and his request for an evidentiary hearing. *Id.* at 119-121.  The court determined

Lacey's claims were either procedurally barred or failed to state a claim for relief.

### iii.    Postconviction Appeal

Lacey challenged the district court's findings on appeal.  (Doc. 1-4 at 25-

62.)  In addition to the IAC claims relative to the search and seizure issues, Lacey

argued his trial counsel was ineffective for failing to challenge his state

prosecution as violative of Montana's multiple prosecution statute, Mont. Code

Ann. § 46-11-504.  In support of his claim, Lacey argued that trial counsel could

have made the same arguments as those advanced by counsel in *State v. Neufeld*,
2009 MT 235, 351 Mont. 389, 212 P. 3d 1063, a case decided several months after
the conclusion of Lacey's direct appeal.[8]  An understanding of the *Neufeld* case is
important to follow Lacey's argument.

### a. State v. Neufeld

Neufeld was charged in state court with sexual intercourse without consent,
involving a thirteen-year-old female, K.B.  Prior to his state trial, however, Neufeld
was also indicted in the U.S. District Court and pled guilty to sexual exploitation of
children, receipt of child pornography, and possession of child pornography.
Neufeld was sentenced to 262 months in federal prison; his federal sentencing
guidelines were enhanced "due to specific offense characteristics because K.B. was
12 but not yet 16 years of age and the offense involved the commission of a sexual
act or sexual contact." *Neufeld*, ¶6.

Neufeld's attorney subsequently moved to dismiss his state charges based
upon Montana's multiple prosecution statute, which prohibits a state prosecution
on charges arising out of the "same transactions" already prosecuted in another
jurisdiction.  Mont. Code Ann. § 46-11-504(1).  The trial court granted the motion
to dismiss, "concluding that Neufeld's sexual conduct with the minor K.B.

---

[8] Lacey's direct appeal was decided on March 3, 2009; *Neufeld* was decided on
July 16, 2009.  See e.g., *Lacey v. State*, 2017 MT 18, ¶ 29.

subjected him to prosecution for equivalent offenses in both the United States and Montana courts and both prosecutions were based on the same transactions." *Id.*, ¶9. The state appealed the dismissal.

In determining whether the subsequent prosecution in state court was barred by Section 46-11-504(1), the Montana Supreme Court applied a three-part test outlined in *State v. Tadewaldt* 277 Mont. 261, 264, 922 P.2d 463, 465 (1996):

> (1) a defendant's conduct constitutes an offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued;
>
> (2) the first prosecution resulted in an acquittal or a conviction; and
>
> (3) the subsequent prosecution is based on an offense arising out of the same transaction [as defined in §46-1-202(23)].

*Neufeld*, 212 P.3d at 1065.

As to the first factor, the court found it is "satisfied when both jurisdictions have authority to prosecute for the same conduct." *Id.* To have such authority, "the same conduct must subject a defendant to the possibility that he could be convicted of an 'equivalent offense' in each jurisdiction. It is not necessary that a defendant be charged with identical offenses in both jurisdictions, only that his conduct constitute an equivalent offense in both jurisdictions." *Id.* (Internal citations omitted). The court then looked to the legal definition of Neufeld's federal offense of sexual exploitation of children, and his state offense of sexual intercourse without consent, and determined that the state sought to punish him for the "same

sexual contact with the same minor" for which he had been punished in federal court. *Id.*, ¶ 17.

Applying the third factor, the court looked to the statutory definition of "same transaction" in Mont. Code Ann. § 46-1-202(23), which states:

> "Same Transaction" means conduct consisting of a series of acts or omissions that are motivated by:
>
>> (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; or
>
>> (b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person or the property of the same person.

The court noted the charging documents in both federal court and state court referenced "the same time and the same sexual conduct with the same victim." The court further found that, while the crimes Neufeld was charged with were different, the same conduct led to each charge. The court said the "[o]ffenses arise from the same transaction when a defendant's underlying conduct which gives rise to each prosecution is motivated by a purpose to accomplish the same criminal objective." *Id.* ¶ 20. The court found Neufeld's criminal objective was to engage in sexual contact with a minor while recording that activity. Because such prohibited conduct constituted crimes under both state and federal law, the court concluded the Montana prosecution was barred. The Montana Supreme Court, therefore, affirmed the dismissal of Neufeld's state charges.

13

### b. Lacey's *Neufeld* argument on PCR appeal

On postconviction appeal, Lacey argued his case was "a carbon copy" of *Neufeld*, and that, like Neufeld, he was subjected to unconstitutional double jeopardy by virtue of the dual prosecutions. (Doc. 1-4 at 39.) Accordingly, Lacey argued trial counsel was ineffective for failing to raise this issue at the trial level, *id.* at 45, and appellate counsel was also ineffective for not presenting the claim on direct appeal. *Id.* at 52.

### iv. Montana Supreme Court Decision

The Montana Supreme Court affirmed the trial court's denial of Lacey's petition. *Lacey v. State*, 2017 MT 18, 386 Mont. 204, 389 P. 3d 233, reh'g denied (Feb. 28, 2017); *see also* (Doc. 1-4 at 187-206). The court first determined Lacey's suppression issues were barred by state procedural rules. Because Lacey's suppression claims had been previously addressed on the merits and denied, Lacey could not get a second bite at the apple by recasting them as ineffective assistance of counsel claims.

For example, to the extent Lacey believed trial counsel performed deficiently for not arguing that Dozier's consent to search the containers in the garage was ineffective without the existence of probable cause, the court determined the issue was squarely addressed on direct appeal. *Lacey v. State*, 2017

14

MT 18, ¶19, 386 Mont. 204, 389 P. 3d 233, 238 (*Lacey II*).  The court noted that on direct appeal it held that "'Lacey assumed the risk that Dozier could in fact assert control' over his items because he allowed 'his items to remain co-mingled, unmarked, and unlocked in a common area in a house he shared with Dozier which was rented in her name alone.'" *Id.*, citing *Lacey I* at ¶ 41.  Moreover, Lacey's claim was mooted because, as the court noted on direct appeal, third-party consent is an exception to the warrant requirement, and therefore probable cause for a warrant was not necessary.  *Id.*, citing *Lacey I* at ¶¶ 37, 41.  Accordingly, the court determined Lacey's postconviction claim relative to the search of the containers in the garage was barred by the court's prior decision denying Lacey relief on direct appeal.  *Id.*

The Montana Supreme Court further held that Lacey's claim relative to the laptop search was barred by res judicata.   Lacey's claim on direct appeal relied on the premise that computers should be entitled to heightened protection under search and seizure law, and that the evidence ultimately seized from the computer should be suppressed as fruit of the poisonous tree.  Addressing the merits of the claim on direct appeal, the court applied the inevitable discovery doctrine *sua sponte*, finding "'it is clear, under the circumstances presented here that the evidence later discovered on the laptop pursuant to the federal search warrant is admissible under the 'inevitable discovery' exception to the fruit of the poisonous

tree doctrine.'"  *Id.*, quoting *Lacey I* at ¶¶ 55-56.  Thus, the court determined it had already resolved the claim in holding that even if BPD had not seized the laptop after initially speaking with Dozier, it would have been subsequently seized and searched.  The court determined that Lacey's attempt to reassert the argument as a postconviction IAC claim was barred by res judicata.  *Id.* at ¶ 22.

The Montana Supreme Court also addressed the merits of Lacey's claim regarding the writ of supervisory control and double jeopardy violations.  The court determined Lacey's claim that counsel should have sought a writ of supervisory control[9] was properly rejected by the district court.  The court noted trial counsel explained her view that there was no basis in Lacey's case to seek such a writ.  *Id.* at ¶ 25.  The court agreed with this assessment, finding that there was no "emergency" in Lacey's case, and the district court was not acting under a mistake of law or gross injustice which would make direct appeal inadequate or supervision of the lower court "necessary or proper."  *Id.* at ¶ 26, citing M.R. App. P. 17(a) (2005).  The normal appeal process was, therefore, the proper channel for Lacey to seek redress.

In relation to the Double Jeopardy claim, the Montana Supreme Court

---

[9] The Montana Rules of Appellate Procedure provide for such a writ: sometimes justified by circumstance of an emergency nature, as when a cause of action or a right has arisen under conditions making due consideration in the trial courts and due appeal to this court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary or proper.  M.R. App. P. 17(a).

determined that neither trial counsel nor appellate counsel were ineffective for failing to raise the argument, because *Neufeld* was not decided until after Lacey's direct appeal had been resolved. Given the state of the law prior to *Neufeld*, the court determined it was not unreasonable for both trial and appellate counsel to elect not to raise the argument. See, *Id*. at ¶ 38. Thus, Lacey was not provided ineffective assistance for the failure to bring the double jeopardy/multiple prosecution claim forward.

Finally, the court determined the district court properly concluded Lacey had failed to state a claim for relief in his postconviction petition. Accordingly, the lower court did not abuse its discretion in denying Lacey's motion for an evidentiary hearing. *Id*. at ¶ 41. Additionally, Lacey was not facing the death penalty, and the "interests of justice" did not require appointment of counsel. *Id*.

### III.   Lacey's Federal Claims

In his current petition, Lacey alleges: (1) trial counsel provided ineffective assistance by: (a) "not arguing against the three exceptions" in *Wong Sun*, (b) not arguing the laptop had been seized prior to the issuance of a federal search warrant,[10] (c) not arguing that the laptop's hard drive was a closed container,[11] and

---

[10] Contrary to this claim, trial counsel did argue that the federal search warrant and application flowed from the initial unlawful seizure of Lacey's laptop, in violation of the exclusionary rule. See, (Doc. 1-1 at 43.)

[11] It does appear that trial counsel argued a computer is a closed container. See

(d) not seeking a writ of supervisory control when the trial court denied Lacey's motion to suppress (Doc. 1 at 14, 16); (2) appellate counsel provided ineffective assistance by failing to raise claims that were subsequently barred by the state postconviction statute (*id.* at 15, 16); (3) post-conviction appellate counsel provided ineffective assistance by failing to mount challenges to procedural bars (*id.*); (4) the State of Montana violated Lacey's constitutional rights by failing to provide him counsel during post-conviction proceedings (*id.*); (5) both trial and appellate counsel were ineffective by not addressing Lacey's right to be free from Double Jeopardy, (*id.* at 16); (6) Lacey's state convictions violate his right to be free from Double Jeopardy under both state and federal law (*id.*); (7) Lacey's sentence review counsel provided ineffective assistance (*id.*); (8) the State of Montana engaged in malicious prosecution by making unwarranted statements during Lacey's sentence review hearing (*id.* at 17); (9) two Montana statutes relating to postconviction proceedings are in conflict with one another and one of those statutes, Mont. Code Ann. § 46-21-104(1)(c), is unconstitutional, (*id*); (10) MCA § 46-21-105(2) is unconstitutional; and, (11) Lacey was denied access to the courts and legal assistance in violation of the Fourteenth Amendment. *Id.* at 18.

/ / /

---

(Doc. 1-1 at 38). The extent of the argument is unclear, however, because there is a page missing from the copy of the brief filed with this Court.

## IV.   Analysis

As explained more fully below, Lacey's petition should be denied.

###   i.   Claims barred by *Stone v. Powell* doctrine- Claims 1(a)-(d)

In his first claim, and its included subparts, Lacey asserts trial counsel provided ineffective assistance for the manner in which she litigated the suppression motions challenging the search and seizure of Lacey's laptop and the boxes and their contents from the garage.  As set forth above, both the trial court and the Montana Supreme Court denied Lacey's Fourth Amendment challenges in the first instance.  Both courts also declined to address Lacey's suppression challenges when recharacterized as IAC claims during his postconviction proceedings.

Fourth Amendment challenges generally are not cognizable in federal habeas proceedings.  *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494.  *Stone's* holding is based upon the principle that the exclusionary rule is "not a personal constitutional right" but is instead a practical way to deter police conduct that violates the Fourth Amendment." *Id*. at 486; see also, *Woolery v. Arave*, 8 F. 3d 1325, 1326 (9th Cir.

1993)(explaining that *Stone's* holding "is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism."). Thus, if a petitioner had a "full and fair opportunity" to litigate his Fourth Amendment claims in the state court, *Stone* bars consideration of the claim in federal habeas. "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Newman v. Wengler*, 790 F. 3d 876, 880 (9th Cir. 2015), citing *Ortiz-Sandoval v. Gomez*, 81 F. 3d 891, 899 (9th Cir. 1996).

Therefore, to consider his Fourth Amendment claims here, Lacey must demonstrate that the state courts did not provide him with a full and fair hearing. See, *Wollery*, 8 F. 3d at 1327-28. Lacey cannot make the required showing. Strong filed a suppression motion on Lacey's behalf, and the district court held a two-day hearing focused on Lacey's attempt to suppress photos and videos obtained from his computer and garage. Lacey appealed the denial of his motion to the Montana Supreme Court, and the court addressed the merits of Lacey's claims. Thus, Lacey utilized the avenues afforded to him under state law to

20

present and litigate his Fourth Amendment claims.

Lacey does not argue that this was not a full and fair opportunity to litigate his claims; rather, he takes issue with the manner in which counsel presented the arguments. Lacey appears to maintain that trial counsel did not effectively anticipate the Montana Supreme Court's application of the inevitable discovery doctrine to his case. But again, this argument does not call into question Lacey's opportunity to litigate his suppression arguments or the fundamental fairness of the attendant proceedings. See, *Siriprongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)(rejecting a Fourth Amendment claim where the federal habeas petitioner's argument "goes not to the fullness and fairness of the opportunity to litigate the claim, but the correctness of the state court resolution, an issue which [*Stone*] makes irrelevant."). Lacey's attempt to recast his Fourth Amendment challenges as IAC claims does not remove the bar *Stone v. Powell* places in his way. These claims should be denied.

### ii.    Claim 2- IAC of Appellate Counsel

Lacey provides little information relative to this claim; he simply alleges appellate counsel, Robin Meguire, was ineffective in violation of the Sixth Amendment when she failed to raise any claim barred by MCA § 46-21-105(2),[12]

---

[12] MCA §46-21-105(2) provides: "When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised,

as determined by the Montana Supreme Court in its opinion affirming denial of Lacey's postconviction petition.  See, (Doc. 1 at 15.)  In support of this claim, Lacey provides a copy of the Montana Supreme Court's decision on direct appeal, see (Doc. 1 at 15), as well as a copy of the petition for rehearing submitted by Ms. Meguire.  *Id.* at 27-35.  One of the arguments advanced in the petition is a challenge to the Montana Supreme Court's sua sponte application of the inevitable discovery exception.  Megurie asserted the evidence on Lacey's laptop would not have been discovered because, had the opportunity presented itself, Lacey likely would have destroyed the computer.  *Id.* at 28-33.  The Court declined to reconsider its opinion.

On postconviction appeal, Lacey argued the district court erred by not granting an evidentiary hearing.  (Doc. 1-4 at 25-32.)  While Lacey's argument focused primarily on his Double Jeopardy claim, he also referenced a claim presented in the postconviciton petition that due to the Montana Supreme Court's *sua sponte* application of the inevitable discovery doctrine, he could not have raised an IAC of trial or appellate counsel claim, regarding counsel's failure to proactively address the exceptions to *Wong Sun*, until his postconviction proceedings.  *Id.* at 20.

---

considered, or decided in a proceeding brought under this chapter."

The Montana Supreme Court rejected the claim, however, finding it was barred by res judicata. *Lacey II*, 2017 MT 18, at ¶ 20.  The court noted that on direct appeal it agreed with Lacey that Dozier did not have authority to consent to the seizure of the laptop, but then determined the inevitable discovery exception applied. *Id.* at ¶21.  Thus, the court determined Lacey was pursuing an issue that had already been resolved on the merits, and he was barred from raising the same grounds again under the guise of an IAC claim.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by The Supreme Court of the United States," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); see also, *Johnson v. Williams*, 568 U.S. 289, 292 (2013).  AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly

deferential standards kick in." *Davis v Ayala*, __ U.S. ___, 135 S. Ct. 2187, 2198 (2015) (citations omitted).

The Montana Supreme Court, relying upon res judicata, did not address Lacey's postconviction claim because it had already ruled on the merits of the underlying issue.  Thus, § 2254(d) requires this Court give deference to the decision, and it is Lacey's burden to demonstrate that the state court's adjudication of his suppression claim was contrary to or an unreasonable application of federal law or that it was based upon an unreasonable determination of the facts.  See, e.g. *Grant v. Royal*, 886 F.3d 874, 929 (10th Cir. 2018), cert. denied sub nom. *Grant v. Carpenter*, 139 S. Ct. 925 (2019) (claim addressed on merits on direct appeal, but denied by state postconviction court on res judicata grounds, reviewed by federal court under the deferential AEDPA standard); *Green v. Palakovich*, 606 F. 3d 85, 103 n. 12 (3d Cir. 2010)( federal court finding that state postconviction court declined to address a claim based on res judicata, because it has already been litigated "on the merits," applied deferential AEDPA standard).

As set forth above, however, Lacey has provided this Court with nothing more than a conclusory allegation and references to the state court record.  He has not attempted to demonstrate the state court's decision was contrary to federal law or was based on an unreasonable determination of the facts.  Moreover, to the extent that Lacey seeks review of his Fourth Amendment claims, such review is

24

precluded by *Stone*. In short, Lacey has not met his burden under AEDPA and this claim should be denied.

### iii.    Postconviction Counsel- Claims 3 & 4

Lacey claims that his post-conviction appellate counsel provided ineffective assistance by failing to mount challenges to procedural bars, and that the State of Montana violated Lacey's constitutional rights by denying him post-conviction counsel. As a preliminary matter, it appears that these claims are procedurally defaulted, but even if they were not, they would afford Lacey no relief. Neither claim is cognizable in federal court.

There is no freestanding federal constitutional right to an attorney in state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See, *Wainwright v. Torna*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance); see also, *Franzen v. Brinkman,* 877 F. 2d 26, 26 (9th Cir. 1989) (per curiam)(holding that claims of error during state postconviction proceedings are not cognizable on federal habeas review); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). These claims should be denied.

/ / /

25

### iv.   Double Jeopardy Issues- Claims 5&6

Both the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution, protect individuals from being twice placed in jeopardy.  Apart from constitutional jurisprudence, Montana has enacted statutory protections against multiple prosecutions in certain instances.  See Mont. Code Ann. §§ 46-11-503 to 505.  Montana's statutes generally provide criminal defendants "greater protection against double jeopardy than the United States Constitution." *State v. Cline*, 2013 MT 188, ¶ 8, 371 Mont. 18, 305 P. 3d 55.

### a.  IAC of Trial and Appellate Counsel

As set forth above, AEDPA requires this Court to give deference to merits decisions issued by the state courts.  Relief may be granted only if Lacey can show that the Montana Supreme Court's decision was "(1) 'contrary to' clearly established federal law as determined by the Supreme Court, (2) 'involved an unreasonable application of such law,' or (3) 'was based on an unreasonable determination of the facts in light of the record before the state court.'" *Dickens v. Ryan,* 740 F. 3d 1302, 1309 (9th Cir. 2014).

Lacey claims both trial counsel and appellate counsel provided ineffective assistance.  The clearly established federal law for ineffective assistance of counsel claims was determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the two-pronged framework of *Strickland*, the Sixth

26

Amendment guarantee of the right to counsel in a criminal proceeding is violated if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." 466 U.S. at 687.

Both prongs of the *Strickland* test must be satisfied to establish a constitutional violation; failure to satisfy either prong requires that an ineffective assistance claim be denied. *Id.*, at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); *Rios v. Rocha*, 299 F. 3d 796, 805 (9th Cir. 2002)("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

In assessing a claim that counsel's representation did not meet the constitutional minimum, the court is to "indulge in a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." *Id.* at 689. The petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. See, *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Additionally, this Court's review of the Montana Supreme Court's determination that neither Lacey's trial counsel nor appellate counsel performed deficiently is "doubly" deferential, because *Strickland* requires state courts to give deference to choices made by counsel, and AEDPA, in turn, requires this Court to defer to the determinations of state courts. *Harrington v. Richter*, 562 U.S. 86, 105

27

(2011)(quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

In denying Lacey's IAC claims, the Montana Supreme Court observed, "[a] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Lacey*, 2017 MT 18, ¶ 28, citing, *Strickland*, 466 U.S. at 690 (emphasis added in state court opinion). The court went on to explain that not only was *Neufeld* not decided prior to Lacey's direct appeal, the *Neufeld* decision marked a significant shift in the application of Montana's multiple prosecution statute. *Id.* at ¶¶ 29-30. The court explained that examination of the caselaw surrounding the first *Tadewaldt* factor[13] at the time of Lacey's proceedings demonstrated that neither trial nor appellate counsel performed deficiently.

Under the state law in effect prior to *Neufeld*, the concurrent jurisdiction factor required both state and federal courts to have authority to prosecute for the same offense. *Id.* at ¶ 31, (referencing *State v. Gazda*, 82 P. 3d 20, 23 (Mont. 2003). Concurrent jurisdiction did not exist "where state and federal courts lack[ed] authority to prosecute *equivalent offenses based on the same underlying conduct. Id. (*Emphasis in original.) To be considered equivalent offenses "[t]he

---

(1)[13] a defendant's conduct constitutes an offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued;

offenses needed to be truly equivalent." *Id.* at ¶ 32.

The Montana Supreme Court found that under this former standard "the charges Lacey faced from the Federal and Montana authorities were not considered "equivalent offenses."" *Id.* at 35. It wasn't until the *Neufeld* decision that different conduct – specifically a sexual assault, and the production and/or transmission of a depiction of the sexual conduct – were considered "equivalent" offenses under Montana law. *Id.* at ¶ 38. Accordingly, the Court determined it was not unreasonable for counsel, prior to *Neufeld*, to believe the first *Tadewaldt* factor was not met in Lacey's case. Therefore, neither trial nor appellate counsel performed deficiently for failing to present this argument.

This same reasoning applies to this Court's review of Lacey's claim under the Sixth Amendment; there is no expectation or requirement that trial or appellate counsel must anticipate changes in the law. Thus, counsel does not perform deficiently by failing to anticipate later decisions of the court that might have changed the outcome. See *Lowry v. Lewis*, 21 F. 3d 344, 346 (9th Cir. 1994)(counsel was not ineffective because a "lawyer cannot be required to anticipate our decision" in a later case); *Sophanthavong v. Palmateer*, 378 F. 3d 859, 870 (9th Cir. 2004)("*Strickland* does not mandate prescience, only objectively reasonable advise under prevailing professional norms"); *Bullock v. Carver*, 297 F. 3d 1036, 1052 (10th Cir. 2002)(rejecting IAC claim based upon counsel's failure

to predict future changes in the law because "clairvoyance is not a required attribute of effective representation"); *Lilly v. Gilmore*, 988 F. 2d 783, 786 (7th Cir. 1993)(counsel not required to forecast changes or advances in the law).

Thus, both trial and appellate counsel both could have reasonably determined they were not required to advance a meritless argument under then-existing state law. Accordingly, the Montana Supreme Court's decision regarding Lacey's IAC claims was not "contrary to" or an "unreasonable application" of *Strickland*. The claim should be denied.

### b. Freestanding Federal Double Jeopardy Claim

This precise claim was never presented to the state courts. Rather, as set forth above, it was alleged trial and appellate counsel were ineffective for failing to pursue the claim. But the claim also fails on its merits; there was no federal constitutional violation.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "No person shall…be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Supreme Court recently reaffirmed the dual-sovereignty doctrine of the Double Jeopardy Clause. *Gamble v. United States*, __ U.S. __, 139 S. Ct. 1960, __ L. Ed. 2d __ (2019). "Under this 'dual-sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct

under a federal statute." *Id.*, at 1964. This has long been recognized as a "firmly
established principle." *Abbate v. United States*, 359 U.S. 187, 195 (1959).

> In *United States v. Lanza*, the Court explained:

> Each government in determining what shall be an offense against its peace
> and dignity is exercising its own sovereignty not that of the other. It follows
> that an act denounced as a crime by both national and state sovereignties is
> an offense against the peace and dignity of both and may be punished by
> each...The defendants thus committed two different offenses by the same
> act, and a conviction by a court of Washington of the offense against that
> state is not a conviction of the different offense against the United States,
> and so is not double jeopardy.

260 U.S. 377, 382 (1922). In *Gamble*, the Court reaffirmed this principle and
noted it would continue to "appl[y] our precedent without qualm or quibble."
*Gamble*, 139 S. Ct. at 1967. Under federal law, the State of Montana and the
United States are both entitled to exercise their sovereignty and enforce their
respective criminal laws. Thus, federal constitutional Double Jeopardy principles
are not offended in this case. This claim should be denied.

### c. Freestanding State Double Jeopardy Claim

Like the federal freestanding double jeopardy claim, this claim also was not
presented to the state courts, but instead was pled as an ineffective assistance of
counsel claim. Thus, the claim presently is unexhausted and procedurally
defaulted. But even if Lacey were to have presented the claim to the state courts,
resolution would turn on state law constitutional principles and statute, see Article
II, Section 25 of the Montana Constitution and Mont. Code Ann. §§ 46-11-503-

505, neither of which are within the province of this Court.  Accordingly, this claim does not allege a basis on which federal habeas relief may be granted. *Lewis*, 497 U.S. at 780; *Estelle*, 502 U.S. at 67-68; see also, *Mendez v. Small*, 298 F. 3d 1154, 1158 (9th Cir. 2002)("[s]tate court has the last word on the interpretation of state law.")  The claim should be denied.

### v.   Procedural Default of Claims 7-11

The remainder of Lacey's claims pertaining to: his state sentence review proceedings (Claims 7 & 8), the constitutionality of Montana statutes (Claims 9 & 10), and the state court's purported denial of Lacey's access to the courts (Claim 11), have never been presented to the state courts for consideration.  Thus, the claims are unexhausted and procedurally defaulted, preventing this Court from hearing them.  See, *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991).  Lacey was advised of this procedural hurdle and advised of the ways in which he might attempt to excuse the default.  See generally, (Doc. 8.)

In his response, Lacey appears to argue that *Martinez v. Ryan*, 566 U.S. 1 (2012) should serve to excuse the default of these claims.  See, (Doc. 24.)  But *Martinez* only recognized a narrow set of circumstances in which the procedural default of a claim of ineffective assistance of trial counsel can be excused due to the ineffectiveness of counsel, or lack thereof, in postconviction proceedings.  See, *Cook v. Ryan*, 688 F. 3d 598, 607 (9th Cir. 2012); see also, *Davila v. Davis*, 137 S.

Ct. 2058, 2065 (2017) (confirming limitation of *Martinez* by holding that ineffective assistance of postconviction counsel does not provide cause to excuse the procedural default of ineffective assistance of appellate counsel claims). None of Lacey's remaining claims relate to the ineffectiveness of trial counsel; accordingly, *Martinez* cannot serve to excuse their default.

Lacey further argues, however, that his default should be excused because he is "legally innocent" under Montana's multiple prosecution statute, and the state failed to protect Lacey from such multiple prosecution. (Doc. 21 at 2-12.) Lacey then goes on to argue that because retroactive application of *Neufeld* to his case would establish his innocence, and because legal innocence is "conceptually and inextricably linked with factual innocence cases," *id.* at 17, this Court should hold an evidentiary hearing and address the merits of all his claims, including those that are procedurally defaulted. *Id.* at 15-19.

A petitioner claiming actual innocence must satisfy the *Schlup* standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011)(en banc). But in the federal habeas context, "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To make a credible claim of actual innocence, petitioner must produce

33

"new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The habeas court then considers all the evidence – old and new, incriminating and exculpatory, admissible at trial or not. *House v. Bell*, 547 U.S. 518, 538 (2006). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 330).

Lacey cannot meet this standard to satisfy the *Schlup* gateway. The argument he presents is one of legal innocence and/or insufficiency under state law, which relies upon the retroactive application of *Neufeld* to his case. While the Court understands that the result in Lacey's case, when compared to the result in *Neufeld*, is certainly inequitable, it does not serve to excuse the procedural barriers before Lacey.

As explained above, there is no viable argument to be made under federal law that Lacey's Fifth Amendment right to be free from double jeopardy was violated; it is precluded by the separate sovereigns doctrine. But even if Lacey could establish a federal constitutional violation, that is not the showing he is required to make. He would need to present new credible evidence to demonstrate that he is *actually* innocent of the crimes of Sexual Intercourse without Consent and Sexual Assault. While Lacey presents an argument for legal innocence under

34

state law, he has failed to state a valid claim of actual innocence that "no reasonable juror would have convicted him" on any of the six state counts of which he was convicted. *Bousley*, 523 U.S. at 623. In fact, Lacey presents no evidence of actual innocence. Thus, Lacey has not made a showing of actual innocence necessary to pass through the narrow gateway for federal habeas review of his procedurally barred claim. These claims are procedurally defaulted without excuse and should be denied.

## V.     Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A certificate of appealability (COA) should be issued as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied. Lacey's Fourth Amendment claims are barred by *Stone*; Lacey's IAC of appellate counsel claim is not subject to review by this Court; Lacey's postconviction claims are not cognizable in

35

federal habeas; Lacey's Double Jeopardy claims do not survive deferential review and/or lack merit; and the remainder of his claims are procedurally defaulted without excuse. There are no close questions or reasons to encourage further proceedings.

Based on the foregoing, the Court enters the following:

## ORDER

1. Lacey's Motion to Appoint Counsel (Doc. 11) is **DENIED**.

2. Lacey's Motion for Leave to File Under Seal (Doc. 12) is **DENIED** as moot.

3. Lacey's Motion for Oral Presentation (Doc. 15) is **DENIED**.

4. Lacey's Motion for Extension of Time (Doc. 17) is **DENIED** as moot.

5. Lacey's Motion for Leave to File Legal Innocence Memorandum (Doc. 19) is **GRANTED**.

6. Motion for Leave to File Over-Length Response (Doc. 22) is **GRANTED**.

## RECOMMENDATIONS

1. Lacey's Petition, (Doc. 1), should be **DENIED**.

2. The Clerk of Court should be directed to enter, by separate document, a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Lacey may object to this Findings and Recommendation within 14 days.[14] 28 U.S.C. § 636(b)(1).  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Lacey must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 27th day of August, 2019.


*/s/ Timothy J. Cavan*
Timothy J. Cavan
United States Magistrate Judge

---

[14] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Lacey is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

37